# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 21-3076

September Term, 2022

FILED ON: FEBRUARY 28, 2023

UNITED STATES OF AMERICA,
          APPELLEE

v.

HUWIDA FADL,
          APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00211-1)

Before: KATSAS and RAO, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

## J U D G M E N T

The Court considered this appeal on the record from the United States District Court for the District of Columbia and the briefs of the parties. The Court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the order of the district court, entered on July 15, 2021, be affirmed.

Huwida Fadl, an alien and a native and citizen of Sudan, pleaded guilty to conspiracy to commit money laundering under 18 U.S.C. § 1956(h) for her involvement in a scheme to steal more than $1 million dollars from the health office of the embassy of Kuwait. Because her crime is an "aggravated felony" as that term is defined in the Immigration and Naturalization Act, she must be removed from the United States. 8 U.S.C. §§ 1101(a)(43)(D), (M)(i), 1227(a)(2)(iii).

In her first appeal, Fadl asserted that her trial counsel, Atiq Ahmed, never told her that conviction would require her removal from the country. She argued that Ahmed was therefore ineffective under the holding in *Padilla v. Kentucky* "that counsel must inform her client whether his plea carries a risk of deportation." 559 U.S. 356, 374 (2010). This court held the record insufficient to "conclusively establish whether the attorney's performance was deficient or

1

whether [Fadl] suffered prejudice on account of the alleged deficiency." *In re Sealed Case*, No. 19-3018, 2020 WL 13120193, at *3 (July 7, 2020). We therefore remanded the case "to the District Court to develop a factual record and rule in the first instance." *Id.*

On remand, the district court, Walton, J., held a seven-day evidentiary hearing during which he heard from multiple witnesses, including Fadl and Ahmed. Some weeks later, the district court denied Fadl's claim. The district court found that Fadl "was aware that deportation was a consequence of her plea of guilty" and that Ahmed "made her aware of that," and therefore held that Ahmed "did provide effective assistance of counsel to her." Along the way, the district court credited Ahmed's testimony that he had warned Fadl "that deportation would be a consequence of her pleading guilty" because "the crime which she was pleading to would be an aggravated felony, which would in fact make her subject to deportation." By contrast, the district court found that Fadl lacked credibility because she made numerous "incredible" assertions, misled the court, and admitted to a grievous crime of dishonesty. Fadl appealed a second time.

The district court having ruled in the first instance after an evidentiary hearing, our role on this appeal is a limited one. Although we review the ultimate legal conclusion of the district court de novo, we "must not" set aside the findings of the district court "unless clearly erroneous," and we "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see also In re Sealed Case*, 552 F.3d 841, 850 (D.C. Cir. 2009) (Edwards, J., concurring) ("[T]he clearly erroneous standard applies to judicial factfinding in criminal cases."). The clearly erroneous standard is deferential. "A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017). Applying the clearly erroneous standard, the findings of the district court are supported by the record and establish that Ahmed's performance was not deficient.

In *Padilla*, the Supreme Court held that when the removal consequences of a guilty plea "could easily be determined from reading the removal statute," the criminal counsel negotiating the plea has a "duty to give correct advice." 559 U.S. at 369. "The proper measure of attorney performance," however, "remains simply reasonableness under prevailing professional norms," *id.* at 366, which require "that counsel must advise her client regarding the risk of deportation." *Id.* at 367. In the light of these prevailing norms, the Supreme Court held in *Padilla* "that counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374.

Ahmed clearly warned Fadl that if she pleaded guilty or was convicted of money laundering, then she would be removed. During their initial meeting, Ahmed warned Fadl "that if she lost at trial or if she took a plea to a money laundering charge she would be deportable." Fadl dismissed the advice because she already had an immigration lawyer. During plea negotiations, Ahmed again clearly warned Fadl that her crime would require removal:

> I told her, that based upon my recent review I believe that crime if she took a plea would be an aggravated felony and aggravated felonies especially above $10,000 are deportable offenses.

2

Although Ahmed was reasonably certain about his legal advice, Ahmed explained that because immigration law is complex and there are sometimes defenses available to criminal aliens, he always tells his clients he is "95 percent firm that it's deportable not 100." Fadl said she would discuss the matter with her immigration lawyer.

Ahmed's prudent warnings fall well within reasonable professional norms of effective representation. Fadl argues that Ahmed should have said "that her deportation was certain"—presumably, at a 100-percent confidence level. She also argues that Ahmed's advice should have been written, not oral. Fadl cites no professional norms of effective representation, let alone any prevailing consensus, requiring omniscient immigration advice from the criminal bar or written advice. Fadl instead argues that *Padilla* by its terms requires a criminal attorney to give immigration advice with legal certainty and provide written disclosures. *Padilla* does not support this bold assertion; indeed, Fadl concedes that "*Padilla* did not state that this advice must be in writing." Nor does *Padilla* require criminal lawyers to give immigration advice with legal certainty. After all, *Padilla* was "not a hard case in which to find deficiency." *Padilla*, 559 U.S. at 368. Removal for the crime of conviction was virtually mandatory, but the criminal attorney provided the defendant "false assurance that his conviction would not result in his removal from this country." *Id.* This too is an easy case, but at the opposite end of the spectrum. It would be imprudent, not "reasonable," to require an inexpert criminal attorney to give immigration advice with legal certainty. *Cf.* D.C. Rules of Professional Conduct 1.1(a) ("Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.").

Fadl also argues that Ahmed's warnings were in English, not Arabic, her native language. This argument may have been persuasive if Fadl did not speak English well enough to understand Ahmed's warnings. Based upon the testimony of multiple witnesses, however, the district court found that Fadl spoke and understood English well enough to understand Ahmed's advice. Fadl fails to show the finding of the district court is clearly erroneous, and she cites no norms of professional competence or caselaw requiring that immigration warnings be in the client's native tongue even when the client understands and speaks English well.

In any event, there can be no doubt that Fadl suffered no prejudice. "[T]o obtain relief on this type of claim, [Fadl] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. Walking away from the deal in this case would have been foolish, not rational. Fadl would have been convicted of an aggravated felony in any event. Before she ever talked to Ahmed, Fadl "had given away the shop. She had been given *Miranda* warnings and then she had spoken to the agents and essentially confessed." Not only had she already confessed to the money laundering scheme, but the Government had witnesses and corroborating evidence showing that Fadl knowingly laundered stolen checks. Fadl's conviction for an aggravated felony was a virtual certainty, so she suffered no prejudice even on her account of Ahmed's representation.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

3

**Per Curiam**

                          **FOR THE COURT:**
                          Mark J. Langer, Clerk

BY:    /s/
           Daniel J. Reidy
           Deputy Clerk